GROSS COMMON CARRIER, INC., a Wisconsin corporation, Plaintiff, Counterdefendant,

v.

BAXTER HEALTHCARE CORPORATION, d/b/a Baxter Converter & Custom Sterile Pharma' Seal, Defendant, Counterclaimant.

No. 93 C 5010.

United States District Court, N.D. Illinois, Eastern Division.

March 30, 1994.

**314**

Allan C. Zuckerman, Chicago, IL, Robert J. Weber, Robert J. Weber, Ltd., Chicago, IL, John W. Bryant, Eames, Wilcox, Mastej, Bryant, Swift and Riddell, Detroit, MI, for Gross Common Carrier, Inc.

Paul J. Kozacky, Kevin T. Conroy, McDermott, Will & Emery, Chicago, IL, for Baxter Healthcare Corp.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Plaintiff, Gross Common Carrier, Inc. ("Gross"), is a common and contract carrier engaged in bankruptcy reorganization proceedings in the Western District of Wisconsin and continuing in operation as a debtor-in-possession. Gross seeks $59,460.78[1] for undercharged transportation from shipper, Baxter Healthcare Corporation ("Baxter"), pursuant to tariffs filed with the Interstate Commerce Commission ("ICC"). Gross has filed numerous undercharge cases against shippers. Most of these cases have been consolidated by the Multidistrict Litigation Panel in the Western District of Wisconsin. This case is before the court on the parties' cross-motions for summary judgment.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the non-movant and all factual disputes resolved in favor of the nonmovant. *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989); *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988); *Jakubiec v. Cities Service Co.*, 844 F.2d 470, 471 (7th Cir.1988). Summary judgment will be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Damjanovic v. United States*, 9 F.3d 1270, 1272 (7th Cir.1993).

Gross is a motor carrier with both common and contract motor carrier authority from the ICC. According to Gross, Gross and Baxter entered into a contract to transport hospital and medical items from September 1988 to August 1991. The uncontradicted facts[2] are that Baxter provided Gross with

---

1. Although Baxter's motion gives this figure, Gross' cross-motion indicates $49,761.47 principal amount due.

2. Gross failed to file Local Rule 12(M) and 12(N) statements of uncontested and contested facts.

Gross merely appended the affidavit of its transportation auditor to its cross-motion. Failure to follow Rule 12(M) is grounds for denying Gross' motion.

information about Baxter's distinct transportation needs, including a volume commitment in excess of two million pounds per year, prior to Gross' bid. When Baxter accepted Gross' bid, the parties entered into a one-year contract that was extended annually until August of 1991. The contract specified that Gross would provide transportation "pursuant to [its] contract carrier permit No. MC 1494 Sub 35." Gross also warranted that "the services, rates, and charges set forth in this Agreement [would] conform to the rules, regulations, and requirements of any regulatory agency having jurisdiction over [Gross'] activities." Baxter Ex. A. After providing transportation for 2.4 million pounds of cargo in the first year, Gross submitted a new rate proposal in 1989. Baxter accepted the new rate, incorporating it into the parties' agreement. The second year, Gross moved 2 million pounds of cargo for Baxter and the parties extended the contract through September 1991. At all times, Gross charged, and Baxter paid for the transportation pursuant to the rates set forth in the parties' contract as amended. The parties continued to operate under the terms of the contract, involving over six million pounds of cargo and thousands of shipments, until August 1991, when Gross discontinued its division specializing in less-than-truckload traffic and filed for bankruptcy in the Western District of Wisconsin.

From time to time, Gross used joint line carriers to perform portions of the underlying transportation service. Although Gross billed any interline shipments to Baxter at the contract rate, Gross now argues the interlining invalidates the contract and, therefore, the shipments involving interlining are subject to Gross' filed tariff rates under the filed rate doctrine.[3] See Reiter v. Cooper, —— U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). Baxter argues that Gross did not have authority, under the contract, to use interliners, in contravention of Gross' own ICC contract authority. Baxter argues Gross' unilateral use of interliners does not

invalidate the contracts or subject Baxter to Gross' tariff rates.

■ Whether or not transportation was provided by a carrier in its common or contract carrier capacity is a question normally falling within the primary jurisdiction of the ICC, which has expertise in this area. See Negotiated Rates Act of 1993, § 8, 139 Cong. Rec. S16183–01, 1993 WL 478679 (Cong.Rec.) (Nov. 18, 1993); Reiter, —— U.S. at ——, 113 S.Ct. at 1220–21 (matters within the special competence of the ICC fall within the ICC's primary jurisdiction). Both parties argue that this court should not refer the resolution of the contract issue to the ICC.[4] Section 8 of the Negotiated Rates Act of 1993 states that "[i]f a motor carrier ... subject to the jurisdiction of the Commission ... has authority to provide transportation as both a motor common carrier and a motor contract carrier and a dispute arises as to whether certain transportation is provided in its common carrier or contract carrier capacity and the parties are not able to resolve the dispute consensually, the Commission shall have jurisdiction to, and shall, resolve the dispute." However, § 9 of the Act provides that "[n]othing in [the] Act ... shall be construed as limiting or otherwise affecting ... title 28, United States Code, relating to the jurisdiction of the courts of the United States." Id. Section 8 of the Act does not limit the jurisdiction of the court or preclude resolution of this case on motions for summary judgment without referral to the ICC.

■ The settled law of the ICC forbids a motor contract carrier from participating in interline service with any other carrier entity. Holmes Contract Carrier Application, 8 M.C.C. 391, 393 (1938); Acme Fast Freight, Inc., Common Carrier Application, 8 M.C.C. 211, 226–27 (1938); Chicago and Wisconsin Points Proportional Rates, 17 M.C.C. 573, 577 (1943); Service of Contract Carriers, 49 M.C.C. 103, 105 (1949). The status of any carrier participating in interline service must

---

**3.** Gross does not argue that Baxter is liable for the interliners' tariffs or that Gross is itself liable to the interliners for any additional amounts under their tariffs.

**4.** Baxter has filed an alternative motion to stay and refer this case to the ICC for determination of its unreasonableness counterclaim in the event this court denies Baxter's motion for summary judgment.

be that of a common carrier. *Holmes,* 8 M.C.C. at 393. In *Holmes,* the ICC noted that common and contract carriers are different in character and that they cannot join with one another for through transportation involving a single transaction with the shipper. 8 M.C.C. at 393. "If interstate ... shipments are interchanged with common carriers, the transportation service is that of a common carrier and not a contract carrier, and a contract carrier may not engage in such interchange without first changing its status to that of a common carrier." *Id.* "A contract carrier cannot undertake to furnish transportation ... which requires the services of another carrier, or include compensation for such transportation to be furnished by others." *Id.* Likewise, in *Chicago and Wisconsin Points Proportional Rates,* 17 M.C.C. 573, 577 (1939), the ICC found that while the existing statute did not specifically prohibit joint rates or arrangements for through carriage between contract carriers, the fact that the statute only makes provision for through rates between common carriers implies that through routes and joint rates are not allowed between a common carrier and a contract carrier.[5] In *Service of Contract Carriers,* 49 M.C.C. 103, 104 (1949), the ICC reaffirmed its earlier decisions, stating that contract carriers "could not lawfully 'interchange' traffic with common carriers in the usual carrier to carrier transaction." *Accord T.T. Brooks Trucking Co., Inc. Conversion Application,* 81 M.C.C. 561, 573 (1959); *Holck Extension—Organic Coatings,* 94 M.C.C. 393 (1964); *Savage Contract Carrier Application,* 108 M.C.C. 205, 212 (1968).

Baxter argues Gross' cited case law is no longer applicable and does not deal with the issue in the case. The *Holmes* case was an ICC review of an application by a common carrier for contract status, over routes requiring it to partly utilize common carriers. Baxter argues the 1980 amendments to the Interstate Commerce Act specifically removed the prohibition against dual contract and common carrier carriage authority, 49 U.S.C. § 10930(a)(2), and implicitly removed any proscription against interlining by contract carriers. While it is true that the

strictures over contract carriage have been steadily loosened, *see Ford Motor Co. v. Security Services, Inc. f/k/a Riss Int'l Corp.,* 9 I.C.C.2d 892, 1993 WL 326548, *9–16, 1993 MCC LEXIS 124, *28–50 (Aug. 27, 1993) (extensively reviewing history of contract carrier regulation), the ICC continues to follow *Holmes'* prohibition of interlining by contract carriers. *See Rubbermaid Inc. (Transcon Lines),* No. 40946, 1993 WL 407377 (I.C.C.) n. 19 (Oct. 13, 1993) ("Contract carriers cannot interline shipments with other carriers, but they may tender them to another carrier as shipper's agent", citing *Holmes* ).

The ICC has also held that "[u]nder ... a [contract carriage] relationship, the carrier cannot subsequently unilaterally recharacterize the traffic as common carrier traffic and rerate the charges using its common carrier tariffs. In other words, if there is a contract carrier relationship to provide services within the scope of the carrier's permit, and the carrier performs those services, there is no statutory basis for ... the parties ... to remedy any actual or asserted deficiencies or breaches of the contract or performance thereunder by voiding the contract carrier relationship and retroactively treating the transportation as that of a motor common carrier." *Ford Motor,* 1993 WL 326548 at *3, 1993 MCC LEXIS 124 at *7–8; *see also General Mills Inc.,* 8 I.C.C.2d 313 (1992) (even a contract incomplete or deficient with respect to Commission regulations would not void the contract carrier relationship and subject the shipper to tariff rates).

To conclude that particular traffic moved under contract carriage, the ICC or the court must ordinarily find: (1) that the carrier held appropriate contract carrier authority to provide the service, (2) that the shipper and the carrier had an agreement for the transportation to be provided as contract carriage and the shipments moved under that agreement, and (3) that the transportation was consistent with the statutory definition of contract carriage. *Rubbermaid,* 1993 WL 407377 (I.C.C.) at *6   The statutory

---

5. Title 49 U.S.C. § 10703(a)(4)(A) provides authority for common carriers to establish

"through routes and joint rates ... with other carriers of the same type."

definition of contract carriage requires that a shipment move under a "continuing agreement" and that the transportation services be designed either to meet the "distinct needs" of the shipper or assign motor vehicles for the exclusive use of that shipper. *See* 49 U.S.C. § 10102(15).

■ In this case, the parties do not dispute the fact that Gross had the authority to provide contract carriage services, that Gross and Baxter had a written contract for the transportation to be provided as contract carriage, that the shipments moved under that contract and that the transportation, aside from the interlining, was pursuant to a continuing agreement designed to meet the distinct needs of the shipper. Gross argues, however, that Baxter knew of the interlining. Baxter, in response, argues that it never knew of the interlining and that the contract did not allow for Gross to interline. Given the undisputed facts, whether or not Baxter knew of the interlining is not crucial to a resolution of these motions. The pivotal issue is whether or not the contract between Baxter and Gross provided for transportation within Gross' contract authority; whether or not the contract allowed Gross to interline. Stated another way, if Gross' interlining was a breach of the contract, its unilateral act cannot subject Baxter to liability for Gross' tariff rate under the filed rate doctrine.

In support of its motion, Gross argues, without any evidentiary support, that Baxter "was aware of the use of these [interline] carriers." Gross' Mem. at 2. Apparently, Gross' belief that Baxter was aware of the interlining is evidenced by notations, made by Gross, on the freight billings issued to Baxter.[6] Gross does not argue that the parties contemplated the use of interliners at the time the contract was executed. Gross' subsequent interlining, if not authorized under the contract, amounts to unilateral action, a breach of the contract, for which Baxter may not be held liable. *Ford Motor,* 1993 WL

326548 at *2–3, 1993 MCC LEXIS 124 at *7–8.

Gross also argues that the bills of lading used by Baxter authorized Gross to fulfill its carrier obligations by delivery to another carrier enroute to the destination and gave Gross the right to forward the property by any carrier enroute between the point of shipment and the point of destination. Gross has appended a sample of Baxter's preprinted bill of lading which contains preprinted language, referring to the applicability of tariffs and the Uniform Domestic Straight Bill of Lading. However, the use of form bills of lading, issued by Baxter, for shipments that both parties intended to be transported under the written contract, do not supersede that contract. In this context, the bills of lading are merely preprinted forms used to evidence the tender of cargo to and from Gross. Gross also notes that the contract provided for percentage discounts from "class rates" contained in Gross' tariffs. Again, however, merely referencing a tariff rate in an agreement for contract carriage does not, by itself, change the character of the contract nor evidence an intent to allow interlining not authorized under Gross' contract authority.

Baxter presents cognizable, uncontroverted[7] evidence that the contract did not provide for interlining, but rather required Gross to comply with its contract carrier authority, that during negotiations Gross told Baxter that Gross would be the sole carrier for Baxter's shipments, that Baxter never was aware of, and that Gross never informed Baxter of, Gross' intent to use interliners and that Gross assured Baxter that if it ever had to use some other carrier to fulfill its obligation, it would notify Baxter in writing prior to using an interline carrier. Therefore, there are no genuine issues of material fact. Gross' use of interliners was a unilateral act, in breach of the contract, that does not invalidate the contract and does not subject Bax-

---

**6.** Although Baxter concedes that certain alphanumeric notations on these billings may have indicated interlining, the sample billing attached to Gross' motion reveals nothing that would indicate carriers other than Gross were used.

**7.** Gross failed to file Local Rule 12(M) and 12(N) statements and failed to support its motion with affidavits or other evidentiary support on the issue of interlining under the contract.

ter to liability for Gross' tariff rate under the filed rate doctrine.

IT IS THEREFORE ORDERED that the motion of defendant Baxter Healthcare Corporation for stay and referral [18] is denied as moot. Cross-motion of plaintiff Gross Common Carrier, Inc. for summary judgment [23] is denied. Motion of defendant Baxter Healthcare Corporation for summary judgment [14] is granted. The Clerk of Court is directed to enter judgment in favor of defendant Baxter Healthcare Corporation and against plaintiff Gross Common Carrier, Inc., dismissing this case with prejudice.