**In re LIFSCHULTZ FAST FREIGHT CORP., Debtor.**

**Bruce E. de'MEDICI, Trustee for Lifschultz Fast Freight Corp., Plaintiff,**

v.

**FDSI MANAGEMENT GROUP, Defendant.**

**Nos. 94 C 4718, 90 B 21673 and 92 A 841.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 26, 1994.

272

Bruce E. de'Medici, Riordan, Larson, Bruckert & Moore, Chicago, IL, trustee/plaintiff and counsel for trustee/plaintiff.

Robert B. Walker, Joseph L. Steinfeld, Jr., John T. Siegler, Sims, Walker & Steinfeld, P.C., Washington, DC, for trustee/plaintiff.

William D. Brejcha, Abramson & Fox, Chicago, IL, Robert J. Gallagher, M. Shields Gallagher & Gallagher, P.C., Northampton, MA, for defendant.

### MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on the plaintiff trustee's objections to the Bankruptcy Judge's proposed findings of fact and conclusions of law, granting the defendant's motion for summary judgment. For the reasons that follow, we overrule the plaintiff's objections and affirm the proposed findings of the bankruptcy judge.

### BACKGROUND

The background of this Chapter 7 case is fully recounted in Bankruptcy Judge Barliant's opinion dated July 1, 1994. As such, our recitation of the facts will be brief. The debtor, Lifschultz Fast Freight Corporation ("Lifschultz"), was a trucking company. The defendant, FDSI Management Group ("FDSI"), was a customer of Lifschultz. After Lifschultz filed for bankruptcy, its appointed Trustee in Bankruptcy, Bruce E. de'Medici (the "trustee") filed suit against FDSI to collect so-called "undercharges" which were allegedly owed to Lifschultz. These undercharges represent the difference between the applicable tariff rate that Lifschultz was legally obligated to charge and the rate that Lifschultz actually charged FDSI.[1] The defendant moved for summary judgment, asserting that under the Negotiated Rates Act of 1993 (the "NRA"), Pub.L. No. 103–180, 107 Stat. 2044 (1993), liability for undercharges of "small business concerns" such as FDSI was eliminated. *See* 49 U.S.C. § 10701(f)(9). The bankruptcy court agreed with the defendant's position and recommended that we enter judgment in defendant's favor. The plaintiff trustee objects to the proposed findings of the bankruptcy court.

---

1. The facts before us represent the typical scenario for this type of case: A motor carrier (such as the debtor) publishes its rates (the "filed rates") in tariffs filed with the Interstate Commerce Commission (the "ICC"). The carrier, however, negotiates lower rates (the "negotiated rates") with its customers, the shippers (such as FDSI). The carrier bills, and the shippers pay, the lower negotiated rates. At some point there-
after the carrier experiences financial difficulties and finds itself under the protection of a bankruptcy court. The carrier or its successor, the bankruptcy trustee, then seeks to recover from the shippers the difference between the negotiated rates and the filed rates. This difference is termed an "undercharge". *Proposed Findings* at 3.

## DISCUSSION

The plaintiff trustee objects to the bankruptcy court's proposed findings. Essentially, the plaintiff argues that, contrary to the findings of the bankruptcy court, subsection 9 of 49 U.S.C. § 10701(f) does not "unconditionally extinguish a small-business concern's liability to pay undercharges." *Proposed. Findings* at 10. The plaintiff asserts that the bankruptcy court's interpretation of § 10701(f) of the NRA was in error, pointing to plain language and legislative history to support the trustee's proposition. According to the plaintiff, § 10701(f)(9), which expressly relieves small business concerns of liability from undercharges, must be read in conjunction with the "In general" provisions set forth in § 10701(f)(1). Having failed to consider § 10701(f)(1), the plaintiff contends that the bankruptcy court misread the statute.

The NRA was enacted to "alleviate the explosion of freight motor carrier undercharge litigation." *Gross Common Carrier, Inc. v. A.B. Dick Co.*, 861 F.Supp. 638, 640 (N.D.Ill.1993). Section 10701(f) of the NRA sets forth the procedures for resolving claims involving unfiled, negotiated transportation rates. In pertinent part, § 10701(f)(1) provides:

> (1) **In general.**—When a claim is made by a motor carrier of property ..., or by a party representing such a [carrier] regarding the collection of rates or charges for such transportation in addition to those originally billed and collected by the [carrier] for such transportation, the person against whom the claim is made may elect to satisfy the claim under the provisions of paragraph (2), (3), or (4) of this subsection, upon showing that—
>
> (A) the carrier or freight forwarder is no longer transporting property or is transporting property for the purpose of avoiding the application of this subsection; and....

49 U.S.C. § 10701(f)(1). Paragraphs (2), (3), and (4) of § 10701(f) then set forth settlement percentages which a qualifying defendant shipper may require a non-operating carrier (or its trustee) to accept in return for a complete satisfaction of the claim. Paragraph (9) of § 10701(f) pertains to claims involving small-business concerns and provides:

> (9) **Claims involving small-business concerns, charitable organizations, and recyclable materials.**—Notwithstanding paragraphs (2), (3), and (4), a person from whom the additional legally applicable and effective tariff rate or charges are sought shall not be liable for the difference between the carrier's applicable and effective tariff rate and the rate originally billed and paid—
>
> (A) if such person qualifies as a small-business concern under the Small Business Act (15 U.S.C. 631 et seq.),....

49 U.S.C. § 10701(f)(9). The plaintiff asserts that a proper interpretation of § 10701(f) necessitates that § 10701(f)(9) be read in conjunction with the "In general" provisions of § 10701(f)(1). The plaintiff further contends that, as such, an application of § 10701(f)(9) in the present case, conflicts with the anti-forfeiture provisions of the Bankruptcy Code. *See* 11 U.S.C. §§ 541(c)(1) and 363(*l*).

The plaintiff stresses that the applicability of the "procedures" set forth in ¶¶ (2)–(4) of 49 U.S.C. § 10701(f) depends upon the cessation of the carrier's operations. The plaintiff trustee contends that conditioning the application of the NRA on the operating status of a carrier is the equivalent of conditioning the application of the NRA on the carrier's financial condition (because a non-operating carrier presumably generates no revenue). Because such a condition would violate the anti-forfeiture provisions of the Bankruptcy Code,[2] the trustee concludes that the NRA is unenforceable against a bankruptcy trustee.

---

**2.** Section 541(c)(1) of the Bankruptcy Code provides in pertinent part:

[A]n interest of the debtor in property becomes property of the estate ... notwithstanding any provision in ... applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modifi-

The bankruptcy court, however, did not agree with the trustee's "conditional" interpretation of § 10701(f). The bankruptcy court discounted the trustee's argument, finding that the defendant was not seeking to apply the ¶¶ (2)–(4) "procedures" for resolving claims under § 10701(f). Rather, the defendant was invoking ¶ (9) of that subsection, which "unconditionally extinguishes a small-business concern's liability to pay undercharges." *Proposed Findings* at 10. Finding that ¶ (9) operates independently of ¶ (1), it did not therefore rely upon the debtor's insolvency or financial state or operating status. *Id.* As such, the bankruptcy court found the trustee's anti-forfeiture provision argument to be inapplicable.[3] *Id.* at 10–11.

This court agrees with the bankruptcy court's reading of the statute. In *Hoarty v. Midwest Carriers Corp. (In re Best Refrigerated Express)*, the court, after a careful examination of § 10701(f), concluded that the "no longer transporting property" provision of the Act did not apply to the application of the small-business defense enumerated in ¶ (9). *Hoarty v. Midwest Carriers Corp. (In re Best Refrigerated Express)*, 168 B.R. 978, 984–85 (Bankr.D.Neb.1994). In so holding, the *Best Refrigerated* court looked to the language of the statute. Notably, the court noted that nothing exists in either paragraph (1) or (9) which would indicate that the "no longer transporting property" provision of § 10701(f)(1)(A) must be met in order to claim the ¶ (9) small-business exemption. *Id.* at 984. Had Congress intended for these provisions to apply to the small-business defense, it could have either incorporated them by reference or set forth in the body of

the relevant paragraphs. Congress chose to do neither.

 We hold that the plain language of the statute supports the finding that the "In general" provisions of ¶ (1) do not apply to the small business defense as set forth in ¶ (9) of § 10701(f). As such, ¶ (9) operates independently of ¶ (1) and unconditionally relieves small-business concerns from liability for undercharges. Given that no material facts are in dispute, the bankruptcy court correctly found that the defendant, as a small-business concern, was exempt from undercharge liability under 49 U.S.C. § 10701(f)(9). Summary judgment in favor of the defendant, FDSI, was therefore appropriate. The Proposed Findings of Fact and Conclusions of Law of the bankruptcy court are affirmed. The plaintiff's objections are overruled.

## CONCLUSION

For the reasons set forth above, we affirm the bankruptcy court's Proposed Findings of Fact and Conclusions of Law. The defendant's motion for summary judgment is granted. The plaintiff's objections are overruled.

## *PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW*

### I. INTRODUCTION

The Debtor in this chapter 7 case, Lifschultz Fast Freight Corporation, was a trucking company operating under the Interstate Commerce Act (the "ICA"). The Defendant, FDSI Management Group ("FDSI"), was a customer of the Debtor. This adversary proceeding is an action by the

---

cation, or termination of the debtor's interest in property.
11 U.S.C. § 541(c)(1). Section 363(*l*) of the Bankruptcy Code parallels § 541(c)(1) and provides in pertinent part:
[T]he trustee may use, sell, or lease property under subsection (b) or (c) of this section … notwithstanding any provision in … applicable law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects, or gives an option to effect, a forfeiture, modification, or

termination of the debtor's interest in such property. 11 U.S.C. § 363(*l*).

3. We note that several courts have expressly rejected the plaintiff's reasoning with respect to the anti-forfeiture argument. *See e.g., Jones Truck Lines v. Grinnell Corp. Anvil Prods. Div.*, 167 B.R. 488, 492–93 (N.D.Ill.1994); *Jones Truck Lines v. Alliance Rubber Co.*, 166 B.R. 691, 693 (W.D.Ark. 1994); *Jones Truck Lines v. AFCO Steel, Inc.*, 849 F.Supp. 1296, 1304–07 (E.D.Ark.1994). On the other hand, only one court has adopted the plaintiff's position. *See In re Bulldog Trucking, Inc.*, 173 B.R. 517, 525 (W.D.N.C.1994).

Trustee to collect so-called "undercharges"—that is, the difference between the applicable tariff rate that the Debtor was legally obligated to charge and the rate that the Debtor actually charged FDSI. FDSI has moved for summary judgment, arguing that in the Negotiated Rates Act of 1993 (the "NRA"), Pub.L. No. 103–180, 107 Stat. 2044 (1993), Congress eliminated the liability of "small-business concerns" for undercharges. FDSI further asserts that it qualifies as a small-business concern. The court agrees with FDSI's position and recommends that the district court enter judgment in its favor.

## II. JURISDICTION

The bankruptcy court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 & 1334. This proceeding is not a core proceeding, but it is related to a case under title 11. *See In re Bulldog Trucking, Inc.,* 173 B.R. 517, 525 (W.D.N.C. 1994) (concluding that, with regard to a bankruptcy trustee's adversary proceeding to recover alleged undercharges from a shipper, "this matter has been determined by the undersigned to be a matter related to a case under Title 11"). *But see In re Best Refrigerated Express, Inc.,* 168 B.R. 978, 980 (Bankr.D.Neb.1994) (concluding that, under identical circumstances, "[t]his is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A) and (E)").

Pursuant to the option afforded by Fed. R.Bankr.P. 7008(a), FDSI has chosen not to consent to the entry of final orders or judgment by the bankruptcy judge. Accordingly, this memorandum constitutes this court's proposed findings of fact and conclusions of law, which are hereby submitted to the district court for the entry of a final judgment. 28 U.S.C. § 157(c)(1); Fed.R.Bankr.P. 9033.

## III. BACKGROUND

The evolution of this case "is typical of many similar cases appearing since the 1980 deregulation of the trucking industry that have been filed by bankruptcy trustees of motor common carriers, as well as by motor common carriers who are themselves debtors-in-possession." *Bulldog,* 173 B.R. at 526.

### A. Historical Perspective

Briefly, the standard scenario for this type of case is as follows: A motor carrier (such as the Debtor) publishes its rates (the "filed rates") in tariffs filed with the Interstate Commerce Commission (the "ICC"), as it is required to do by the ICA, codified at 49 U.S.C. §§ 10101–11917. The carrier, however, negotiates lower rates (the "negotiated rates") with its customers, the shippers (such as FDSI). The carrier bills, and the shippers pay, the lower negotiated rates. Sometime later the carrier encounters financial difficulties and perhaps finds itself, voluntarily or involuntarily, under the protection of a bankruptcy court. The carrier or its successor, the bankruptcy trustee, seeks to recover from the shippers the difference between the negotiated rates and the filed rates. This difference is termed an "undercharge."

Before 1990, shippers who found themselves in this predicament routinely asserted the defense that the carrier's or the trustee's attempt to collect these undercharges constitutes an "unreasonable practice." The ICC generally supported this defense; in fact, the ICC's position came to be known as the "negotiated rate doctrine." In *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 130, 110 S.Ct. 2759, 2768, 111 L.Ed.2d 94 (1990), however, the Supreme Court held that the negotiated rate doctrine is contrary to the ICA and is, therefore, invalid. But later, in *Reiter v. Cooper,* —— U.S. ——, ——, 113 S.Ct. 1213, 1217, 122 L.Ed.2d 604 (1993), the Supreme Court ruled that shippers may assert that the filed rates themselves are unreasonable. As a matter of procedure, the Court permitted shippers to raise a counterclaim for recoupment of an amount equal to the undercharge, thus asserting that the negotiated rate was the reasonable one.

Congress enacted the NRA against this historical backdrop. *See Gross Common Carrier, Inc. v. A.B. Dick Co.,* 861 F.Supp. 638, 640–41 (N.D.Ill.1994). The NRA "is intended to alleviate the explosion of freight motor carrier undercharge litigation." *Id.* at 640.

### B. Procedural History of This Adversary Proceeding [1]

The court entered an order for relief under chapter 11 in the underlying involuntary bankruptcy case on December 13, 1990. Thereafter, the Debtor ceased operations, and the case was converted to a case under chapter 7. Bruce E. de'Medici, the chapter 7 Trustee, filed numerous adversary complaints in this court in an attempt to collect undercharges from shippers who had utilized the Debtor's services. In this proceeding, the Trustee claims $7,992.27 in undercharges from FDSI.

On July 23, 1993, this adversary proceeding was stayed pending the ICC's resolution of FDSI's recoupment counterclaim. *In re Lifschultz Fast Freight Corp.*, 157 B.R. 397 (Bankr.N.D.Ill.1993). The ICC subsequently held its proceeding in abeyance pending this court's decision regarding FDSI's instant motion for summary judgment based upon the newly enacted NRA. *FDSI Management Group*, No. 41055 (ICC Feb. 4, 1994).

## IV. ANALYSIS

### A. Summary Judgment

#### 1. Standard of Review

In order to succeed in a motion for summary judgment, the moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).[2] *See also Damnjanovic v. United States*, 9 F.3d 1270, 1272 (7th Cir.1993) ("Taking all facts and inferences in favor of the non-moving party, the question is whether a genuine issue of material fact exists to preclude judgment as a matter of law for the moving party."); *Gross Common Carrier, Inc. v. Baxter Healthcare Corp.*, 851 F.Supp. 313, 314 (N.D.Ill.1994) ("Summary judgment will be granted where there are no

genuine issues of material fact and the movant is entitled to judgment as a matter of law.").

None of the facts relevant to the resolution of this summary judgment motion is in dispute: The Debtor was a motor carrier subject to the jurisdiction of the ICC. The Debtor provided transportation services to FDSI. The Debtor billed and FDSI paid the negotiated rate instead of the filed rate, and the value of the undercharges for the services that the Debtor provided to FDSI is $7,992.27.[3] The Trustee's adversary proceeding against FDSI for undercharges was pending on the date that the NRA was enacted. FDSI is a small-business concern for the purposes of the NRA.

With regard to this last finding, the NRA refers to the Small Business Act (the "SBA"), codified at 15 U.S.C. §§ 631–697c, for the definition of small-business concerns. 49 U.S.C. § 10701(f)(9)(A). The SBA, in turn,

> does not define the criteria for determining what constitutes a small business in the common motor carrier industry; it merely sets forth guidelines for administrative agencies to make such determinations. 15 U.S.C. § 632. The Code of Federal Regulations ..., 13 C.F.R. § 121.601, however, does provide specific direction in this matter in a table of "Standard Industrial Classification" [SIC] codes and corresponding industrial size standards for small-business programs.

*Lewis v. H.E. Wisdom & Sons, Inc.*, No. 93 C 0985, 1994 WL 110659, at *4 (N.D.Ill. Mar. 31, 1994) (brackets in original).

The president of FDSI signed an affidavit asserting that FDSI is a small-business concern under SIC classification code 4731. The Trustee has not disputed this assertion.

---

1. The background of the underlying bankruptcy case is set forth in the following two previously published opinions: *In re Lifschultz Fast Freight Corp.*, 140 B.R. 482, 484 (Bankr.N.D.Ill.1992), and *In re Lifschultz Fast Freight Corp.*, 157 B.R. 397, 398–99 (Bankr.N.D.Ill.1993).

2. Fed.R.Bankr.P. 7056 applies Fed.R.Civ.P. 56 to adversary proceedings.

3. FDSI disputes the existence and value of the purported undercharges. However, these issues are not material because, as discussed below, the NRA eliminates FDSI's liability for any undercharges, regardless of the amount.

## 2. Applicability of the Negotiated Rates Act of 1993

Section 2(a) of the NRA amends 49 U.S.C. § 10701 by adding a new subsection (f), which is entitled "Procedures for Resolving Claims Involving Unfiled, Negotiated Transportation Rates." Paragraph (9) of 49 U.S.C. § 10701(f), as amended, provides in pertinent part:

> **(9) Claims involving small-business concerns, charitable organizations, and recyclable materials.**—Notwithstanding paragraphs (2), (3), and (4), a person from whom the additional legally applicable and effective tariff rate or charges are sought shall not be liable for the difference between the carrier's applicable and effective tariff rate and the rate originally billed and paid—
>
> (A) if such person qualifies as a small-business concern under the Small Business Act (15 U.S.C. 631 et seq.)[.]
>
> \* \* \* \* \* \*

Accordingly, since FDSI is a small-business concern, if the NRA, and in particular the "small-business concern defense" codified at 49 U.S.C. § 10701(f)(9), applies to the instant adversary proceeding, then FDSI is entitled to summary judgment as a matter of law because any liability to the Trustee for undercharges is extinguished.

The Trustee asserts that the small-business concern defense is ineffective against him for two reasons. First, according to the Trustee, this provision conflicts with the so-called "anti-forfeiture provisions" of the Bankruptcy Code, 11 U.S.C. §§ 541(c)(1) and

363($l$),[4] especially when NRA § 9 (quoted below at part IV.A.2.b) is taken into account. Second, the Trustee maintains that the application of the small-business concern defense violates the automatic stay provision of the Code, 11 U.S.C. § 362(a)(3).

### a. Anti–Forfeiture Provisions of the Bankruptcy Code

In general, when an entity files a bankruptcy petition, a bankruptcy estate is created, and all of that entity's pre-petition real and personal property becomes property of the estate. *See* 11 U.S.C. § 541(a)(1). Section 541(c)(1) of the Code invalidates any contractual or nonbankruptcy statutory provision that would otherwise restrict the transfer of the debtor's property to the bankruptcy estate.[5]

Similarly, a trustee in bankruptcy is vested with broad authority to use, sell, or lease property of the estate, either in the ordinary course of business, *see* 11 U.S.C. § 363(c), or outside the ordinary course of business after notice and a hearing, *see* 11 U.S.C. § 363(b). Section 363($l$) of the Code parallels § 541(c)(1) by invalidating any contractual or statutory provision that would otherwise restrain the trustee in exercising this power.[6]

The Trustee contends that these two provisions of the Code, in conjunction with NRA § 9, render NRA § 2(a) inapplicable here because 1) "the NRA is a 'non-bankruptcy law'"; 2) NRA § 2(a) "purport[s] to work a forfeiture, modification and termination of the right of specified motor carriers and their trustees to recover freight underchar-

---

**4.** The subsection letter "($l$)" (as in "Lima") of 11 U.S.C. § 363 is typically italicized to distinguish it from the paragraph numeral "(1)" ("one").

**5.** 11 U.S.C. § 541(c)(1) provides in pertinent part:

> [A]n interest of the debtor in property becomes property of the estate ... notwithstanding any provision in ... applicable nonbankruptcy law—
>
> (A) that restricts or conditions transfer of such interest by the debtor; or
>
> (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and

> that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

**6.** 11 U.S.C. § 363($l$) provides in pertinent part:

> [T]he trustee may use, sell, or lease property under subsection (b) or (c) of this section ... notwithstanding any provision in ... applicable law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's interest in such property.

ges"; and 3) "the applicability of the NRA is conditioned on the financial condition of the carrier." Pl.'s Mem. in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J., at 6. The Trustee's argument fails on point 3 because the NRA provision extinguishing a small-business concern's liability for undercharges is not triggered by the carrier's insolvency or financial condition.

The NRA provides that a shipper may elect to apply that statute's "procedures" for resolving claims, codified at 49 U.S.C. §§ 10701(f)(2)–(4), "upon showing that—(A) the carrier ... is no longer transporting property or is transporting property for the purpose of avoiding the application of this subsection...." 49 U.S.C. § 10701(f)(1). Thus, the applicability of the "procedures" set forth in ¶¶ (2)–(4) of 49 U.S.C. § 10701(f) is conditioned upon the cessation of the carrier's operations. The Trustee contends that a non-operating carrier generates no revenue, and this lack of revenue directly affects a carrier's financial condition. Consequently, the Trustee argues, conditioning the application of the NRA on the operating status of a carrier is the same as conditioning its application on a carrier's financial condition. Such a condition violates the Code's anti-forfeiture provisions. Therefore, the Trustee concludes, the NRA is unenforceable against a bankruptcy trustee.[7]

What the Trustee overlooks is that FDSI is not seeking to apply the "procedures" for resolving claims appearing at ¶¶ (2)–(4) of 49 U.S.C. § 10701(f); instead, FDSI is invoking ¶ (9) of that subsection, which unconditionally extinguishes a small-business concern's liability to pay undercharges. That is, the provision upon which FDSI relies is not conditioned upon the Debtor's insolvency or financial state or operating status. Therefore, the Trustee's anti-forfeiture provision argument, which applies only when a forfeiture is triggered by the Debtor's insolvency or financial condition, is inapplicable here. *See Best Re-*

*frigerated*, 168 B.R. at 984–85 ("Had Congress intended the 'no longer transporting property' clause of (f)(1)(A) to apply to (f)(9), the small business concern paragraph, it would have listed paragraph (9) with (2), (3) and (4) under Section 10107(f)(1), as it did under 10701(f)(7).").

**b. Section 9 of the Negotiated Rates Act**

The Trustee's position is not strengthened by the application of NRA § 9. This section, which is entitled "Limitation on Statutory Construction," provides as follows:

Nothing in this Act (including any amendment made by this Act) shall be construed as limiting or otherwise affecting application of title 11, United States Code, relating to bankruptcy; title 28, United States Code, relating to the jurisdiction of the courts of the United States (including bankruptcy courts); or the Employee Retirement Income Security Act of 1974.

Section 9 of the NRA merely provides that if a conflict exists between the NRA and the Bankruptcy Code, then the Code takes precedence. There is no such conflict here, so NRA § 9 does not affect the court's decision.

**c. Automatic Stay Provision of the Bankruptcy Code**

The Trustee's other argument is that FDSI's attempt to invoke the NRA to eliminate FDSI's liability to the Trustee for undercharges is a violation of automatic stay imposed by the Code when a bankruptcy petition is filed.

The Code section upon which the Trustee relies provides in pertinent part that "a [bankruptcy] petition ... operates as a stay, applicable to all entities, of ... any act ... to exercise control over property of the estate...." 11 U.S.C. § 362(a)(3). The "property of the estate" to which the Trustee refers is his cause of action against FDSI to collect undercharges. *See, e.g., In re Che-*

---

7. Only one court has adopted the Trustee's position with respect to this argument. *See Bulldog,* 173 B.R. at 533–42. Several other courts have expressly rejected this reasoning. *See Jones Truck Lines, Inc. v. Grinnell Corp. Anvil Prods. Div.,* 167 B.R. 488, 492–93 (N.D.Ill.1994); *Jones Truck Lines, Inc. v. Alliance Rubber Co.,* 166 B.R. 691, 693 (W.D.Ark.1994); *Jones Truck Lines, Inc. v. AFCO Steel, Inc.,* 849 F.Supp. 1296, 1304–07 (E.D.Ark.1994); *Allen v. ITM, Ltd. South,* 167 B.R. 63, 66–67 (M.D.N.C.1994); *Jones Truck Lines, Inc. v. Aladdin Synergetics, Inc.,* 174 B.R. 76, 81 n. 9 (M.D.Tenn.1994).

*noweth,* 143 B.R. 527, 534 (S.D.Ill.1992) ("Causes of action are among the property interests that become property of a debtor's bankruptcy estate under section 541(a)(1)."), *aff'd,* 3 F.3d 1111 (7th Cir.1993); *In re U.S. Marketing Concepts, Inc.,* 113 B.R. 487, 490 (Bankr.N.D.Ind.1990) ("The bankruptcy estate extends to include any cause of action that the trustee may be entitled to prosecute against third parties for the benefit of the estate and, ultimately, its creditors.").

According to the Trustee, "Allowing [FDSI] to dismiss this action under Section 2 of the NRA would allow [FDSI] to 'control' that property because the Trustee would then be prohibited from pursuing those claims." Pl.'s Mem. in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ.J., at 27. The Trustee's argument misapprehends the scope of the automatic stay.

The automatic stay imposed by the Bankruptcy Code is indeed exceedingly broad; it prohibits any entity from taking certain actions, including commencing or continuing litigation affecting the estate. *See* 11 U.S.C. § 362(a)(1). However, the stay does not prohibit a defendant from asserting an affirmative defense in a bankruptcy trustee's adversary proceeding. Nor does the stay "freeze," as of the date of the bankruptcy petition, the substantive law applying to such an adversary proceeding. Accordingly, the automatic stay does not prohibit the retroactive application of the NRA, and the Trustee's argument fails.

### B. Other Relief

In its motion for summary judgment, FDSI also "ask[s] the Court to allow the Interstate Commerce Commission to continue its determination on this matter, if the order of dismissal is appealed, as challenges to the Act are anticipated, and the Defendant does not want other valid defenses to be wasted." Def.'s Mem. of Law in Supp. of Mot. for Summ.J., at 2.

There are a number of problems with this requested relief, including issues of jurisdiction and justiciability. The most significant complication, however, is that the ICC held its proceeding in abeyance specifically in response to a motion by FDSI. If FDSI wishes the ICC to resume its proceeding, then FDSI should seek that relief from the ICC directly. Therefore, it is recommended that the district court deny this relief.

### V. CONCLUSION

While the Trustee's adversary proceeding against FDSI to collect undercharges was pending, Congress enacted the NRA. This statute retroactively absolves FDSI, a small-business concern, from any liability for undercharges. Neither the anti-forfeiture provisions nor the automatic stay imposed by the Code applies to the application of this provision of the NRA—FDSI may properly assert the small-business concern defense to the Trustee's proceeding. Therefore, this court recommends that, pursuant to 28 U.S.C. § 157(c)(1), the district court enter judgment in favor of FDSI and deny all other requested relief.

DATED: July 1, 1994.

ENTERED: /s/ <u>Ronald Barliant</u>

Hon. Ronald Barliant

Bankruptcy Judge