**In re AMERICAN FREIGHT SYSTEM, INC., Debtor.**

**AMERICAN FREIGHT SYSTEM, INC., Plaintiff,**

**v.**

**SAGAZ INDUSTRIES, INC., Defendant.**

Bankruptcy No. 88–41050–11.
Adv. No. 90–7393.

United States Bankruptcy Court,
D. Kansas.

Jan. 17, 1996.

Kurt Stohlgren, Kansas City, Missouri, for Plaintiff.

Gene A. Deleve, Kansas City, Missouri, for Defendant.

### ORDER DENYING SUMMARY JUDGMENT

JULIE A. ROBINSON, Bankruptcy Judge.

Defendant Sagaz Industries, Inc. (Sagaz) filed a motion for summary judgment to which plaintiff American Freight System, Inc. (AFS) objected. In this adversary proceeding, AFS seeks to recover from Sagaz, more than $70,000 on 337 shipments of freight in 1986 and 1987. Sagaz characterizes AFS's claim as one for "undercharges." AFS calls its claim one for "undercharges" as well as "original unpaid accounts receivable" and "bills originally short paid." Sagaz contends that it is exempt from liability for these charges, pursuant to § 10701(f)(9) of the Negotiated Rates Act of 1993 (NRA), which exempts certain shippers from liability. AFS contends that Sagaz has failed to make the requisite preliminary showings under the NRA that would establish that the NRA applies to AFS's claims and further that Sagaz has failed to show that it qualifies for an exemption. The Court agrees with AFS that Sagaz has failed to show that the NRA

applies to this action, and denies the motion for summary judgment on that basis.[1]

## FACTS

There are few facts material to the Court's inquiry into the sufficiency of Sagaz's preliminary showing regarding the applicability of the NRA. The uncontroverted material facts on this issue are as follows.

1. Sagaz contracted with AFS to ship freight in 1986 and 1987.

2. There are 337 disputed freight bills, 328 of which are bills for which the original bill was paid in full.

3. The remaining seven disputed freight bills are in the total amount of $1208.51. For the purpose of this Motion for Summary Judgment only, Sagaz concedes that AFS is entitled to recover the amount of these seven bills.

## JURISDICTION

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (O). The Negotiated Rates Act of 1993 also confers jurisdiction on this Court. 49 U.S.C. § 10701(f)(1).

## STANDARDS FOR SUMMARY JUDGMENT

■ Rule 56 of the Federal Rules of Civil Procedure governs summary judgments, and is made applicable to bankruptcy adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Rule 56, in articulating the standard of review for summary judgment motions, provides that judgment shall be rendered if all pleadings, depositions, answers to interrogatories, and admissions and affidavits on file show that there are no genuine issues of any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Fed.R.Bankr.P. 7056. In determining whether any genuine issues of material fact exist, the Court must construe the record liberally in favor of the party opposing the summary judgment. *McKibben v. Chubb,* 840 F.2d 1525, 1528 (10th Cir.1988) (citations omitted). However, the opposing party's conclusive allegations are not sufficient to establish an issue of fact and defeat the motion. *Id.*

## THE NEGOTIATED RATES ACT

■ On December 1, 1993, the NRA (Pub.L. No. 103–180, 107 Stat. 2044) became effective. It modified the Interstate Commerce Act by, inter alia, allowing shipper-defendants in undercharge actions to (1) settle certain undercharge claims through prescribed settlement formulas; (2) be relieved from all liability above the charges originally billed and paid if the shipper qualifies as a "small-business concern" or a tax-exempt organization, or if the cargo involved in the claim is recyclable materials; or (3) for transportation provided before September 30, 1990, to be free from undercharges the collection of which the ICC determines to be an unreasonable practice. *See* Section 2(a)-(d) of the NRA, codified as 49 U.S.C. § 10701(f).

Section 2 of the NRA adds a new subsection (f) to § 10701, which is entitled "Procedures for resolving claims involving unfiled, negotiated transportation rates" and provides:

(1) In general.—When a claim is made by a motor carrier of property (other than a household goods carrier) providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title, by a freight forwarder (other than a household goods freight forwarder), or by a party representing such a carrier or freight forwarder regarding the collection of rates or charges for such transportation in addition to those originally billed and collected by the carrier or freight forwarder for such transportation, the person against whom the claim is made may elect to satisfy the claim under the provisions of paragraph (2), (3), or (4) of this subsection, upon showing that—

(A) the carrier or freight forwarder is no longer transporting property or is transporting property for the purpose of avoiding application of this subsection; and

---

1. Therefore the Court need not reach the second issue of whether Sagaz has demonstrated that it qualifies for a "small business concern" exemption under § 10701(f)(9) of the NRA.

(B) with respect to the claim—

(i) the person was offered a transportation rate by the carrier ... other than that legally on file with the [ICC] for the transportation service;

(ii) the person tendered freight to the carrier ... in reasonable reliance upon the offered transportation rate;

(iii) the carrier ... did not properly or timely file with the [ICC] a tariff providing for such transportation rate or failed to enter into an agreement for contract carriage;

(iv) such transportation rate was billed and collected by the carrier ...; and

(v) the carrier ... demands additional payment of a higher rate filed in a tariff.

49 U.S.C. § 10701(f)(1).

Subsection (f) further provides:

(9) Claims involving small business concerns, charitable organizations, and recyclable materials.—Notwithstanding paragraphs (2), (3), and (4), a person from whom the additional legally applicable and effective tariff rate or charges are sought shall not be liable for the difference between the carrier's applicable and effective tariff rate and the rate originally billed and paid—

(A) if such person qualifies as a small business concern ...,

(B) if such person is [a charitable organization described in certain provisions of the Internal Revenue Code], or

(C) if the cargo involved in the claim is recyclable materials ...

## DISCUSSION

■ Sagaz contends that it is a small business concern under the provisions of the Small Business Act, 15 U.S.C. §§ 631 et seq., and that it is not liable for these additional amounts, which represent the difference between the rates originally billed and paid and AFS's alleged applicable and effective tariff rate. AFS argues that Sagaz has failed to

show that the NRA applies to the claims at issue and has further failed to show that it is a small business concern within the meaning of § 10701(f)(9). AFS contends that Sagaz must first show, pursuant to § 10701(f)(1)(A), that AFS is "no longer transporting property" and pursuant to § 10701(f)(1)(B) that AFS's claim is an undercharge as therein defined.[2]

Most courts have rejected the position advanced by AFS and held that a shipper who claims an exemption under § 10701(f)(9) need not show the status of the operating carrier nor show that the carrier's claim meets the test in § 10701(f)(1)(B). *See, e.g., Jones Truck Lines v. Whittier Wood Products (In re Jones Truck Lines),* 57 F.3d 642, 647–49 (8th Cir.1995); *De'Medici v. FDSI Management Group (In re Lifschultz Fast Freight Corp.),* 174 B.R. 271, 273–74 (N.D.Ill. 1994), *aff'd* 63 F.3d 621 (7th Cir.1995); *North Penn Transfer v. Polykote Corp.,* 170 B.R. 565, 567–68 (E.D.Pa.1994); *Hoarty v. Midwest Carriers (In re Best Refrigerated Express),* 168 B.R. 978, 984–85 (Bankr.D.Neb. 1994). One court has, however, held that a shipper must first make the § 10701(f)(1) showings before the court need determine whether the shipper is entitled to an exemption under § 10701(f)(9). *See American Freight System, Inc. v. Valiant Products Corp. (In re American Freight System, Inc.),* 185 B.R. 345 (Bankr.D.Kan.1995) [J. Pusateri]. This Court thinks the reasoning in that decision is sound and adopts its rationale.

The majority of courts, which have reached the opposite conclusion, have improperly applied the plain meaning jurisprudence of statutory construction and reached a clearly unsound result. In brief, these other courts conclude that a shipper entitled to an exemption under § 10701(f)(9) need not make the showings under § 10701(f)(1) because § 10701(f)(1) specifically references claims that may be satisfied under the election provisions of §§ (f)(2), (3) and (4), but does not reference claims of shippers who may be

---

2. This Court has already determined that AFS is "no longer transporting property," therefore, the issue is moot to that extent. Thus, the Court's holding is limited to the necessity of showing that

the claim involves an undercharge as a requirement precedent to obtaining an exemption under § 10701(f)(9).

exempt under § 10701(f)(9). Thus, a shipper who seeks to satisfy liability by compromise under §§ (f)(2), (3) or (4), must show that the liability is for an undercharge as defined in § 10701(f)(1)(B), and that the carrier is no longer operating, as stated in § 10701(f)(1)(A). Yet, a shipper who seeks an exemption from liability need not show that the liability is for an undercharge or that the carrier is no longer operating.

■ This absurd result was reached by distilling the "plain meaning" of § 10701(f)(9) in a vacuum. Yet plain meaning jurisprudence does not displace other methods of statutory construction. It is axiomatic that all text has context. Sections of a statute should be read in *pari materia*. And, in determining the meaning of language in a text, one should not ignore the title of the text. In rushing to discern the plain meaning of § 10701(f)(9), these courts ignore the title of § 10701(f), "Procedures for resolving claims involving unfiled, negotiated transportation rates." The title evidences that this statute concerns undercharge claims. Thus, the "claims" referenced in § 10701(f)(9), as well as the "claims" referenced in § 10701(f)(1), (2), (3) and (4), must be claims involving unfiled, negotiated transportation rates, as the title to § 10701(f) states.

Surely it is proper to question why § (f)(9) is not mentioned in § 10701(f)(1), as these other courts do. However, it is not proper to cease inquiry when faced with the ambiguity that this raises. Perhaps there is some significance in § (f)(9) not being referenced in § 10701(f)(1). Perhaps claim or liability has a different meaning in § 10701(f)(9) than in § 10701(f)(1)(B). In § 10701(f)(1)(B), claim is defined as a demand for additional payment of a higher rate filed in a tariff, and not the rate agreed to by the parties. In § 10701(f)(9), certain persons are exempt from "the additional legally applicable and effective tariff rate or charges sought" and "shall not be liable for the difference between the carrier's applicable and effective tariff rate and the rate originally billed and paid." This is arguably a shorthand definition of the undercharge as defined in § 10701(f)(1)(B). However, there is one notable difference between the definitions in these two sections.

In § 10701(f)(9) there is no indication that the rate "originally billed and paid" was a negotiated rate. If the carrier had mistakenly under billed a shipper and later filed suit to recover the difference between the mistaken billing and the filed rate, § 10701(f)(9) would arguably exempt the shipper from liability based on this mistake. But, that interpretation gives rise to ambiguity, because the statute is the "Negotiated Rates Act" and § 10701 is entitled "Procedures for resolving claims involving unfiled, negotiated transportation rates." If small businesses are entitled to exempt themselves from liability for all claims, why would such an expansive amnesty be buried in a statute concerning negotiated rates. And, if the literal meaning of (f)(9) is to provide relief to shippers from claims other than those based on negotiated rates, despite being a small passage in a remedial statute called "The Negotiated Rates Act," then that gives rise to ambiguity which requires further inquiry. One must look beyond such ambiguous language and use canons of statutory construction and/or legislative history to glean its true meaning. The legislative history provides ample evidence of what liabilities are pardoned under § 10701(f)(9). For example, in introducing S.412, the following statements were made:

> Small businesses, charitable organizations, and recyclers (which includes recyclers of rubber) would be exempt from **applicable undercharge claims.**
>
> ·    ·    ·    ·    ·
>
> This bill establishes settlement formulas for a variety of situations. Different approaches are taken with respect to truckload and less than truckload shipments, since carriers usually give shippers larger discounts on truckload shipments.
>
> ·    ·    ·    ·    ·
>
> Furthermore, the legislation makes a distinction on the basis of the size of the shipper, **totally exempting small shippers from undercharge claims.**

139 Cong.Rec. S16183–01 (daily ed. November 18, 1993) (statements of Sen. Hollings and Sen. Danforth) (emphasis added).

The House and Senate Reports similarly indicate that the exemption provisions apply

to undercharge claims otherwise applicable under the NRA. They provide that:

> The legislation as reported would treat separately small shippers (defined as entities meeting Small Business Administration (SBA) guidelines) and charitable organizations (defined as organizations exempt from taxation under section 503(c)(3) of the Internal Revenue Code of 1986 (IRC)), by **absolving them of all undercharge liability for claims meeting the threshold standard established.**
>
> . . . .
>
> **Assuming that the undercharge claim meets the above criteria for application of the resolution provisions,** the legislation as reported provides that, if the person or entity against whom the claim is made is a small business concern (as defined by the SBA) or a charitable organization (defined as a person or entity exempt from taxation pursuant to section 503(c)(3) of the IRC), that person or entity shall be **exempt from all further undercharge liability.**
>
> . . . .
>
> Small businesses and charitable organizations are not required to pay undercharge claims and all claims against these concerns are considered satisfied. The Committee believes that special treatment for small business and charitable concerns is justified because these entities are less likely to be able to defray the costs of settling undercharge claims.

S.Rep. No. 79, 103rd Cong., 1st Sess. (1993) (emphasis added). The House Report provides that:

> H.R.2121 approaches the problems arising from undercharge claims in two ways. First, it provides three alternatives on how to resolve undercharge claims and second it provides a variety of regulatory changes which should abate further problems and quiet some of the controversy caused by the prosecution of some of these claims.
>
> . . . .
>
> First, shippers may assert the defense of unreasonable practice ... Second, shippers can elect to avail themselves of the settlement procedures in the bill where

additional charges are sought provided certain conditions prevail.

> . . . .
>
> In addition, the bill declares amnesty for claims involving small shippers, charitable organizations, and recyclers. The Committee believed that these groups should not be held liable for any of the undercharge claims pending against them.

H.R.Rep. No. 359, 103rd Cong., 1st Sess. (1993), *reprinted in* 1993 U.S.C.C.A.N. 2534, 2536.

■ The legislative history of the NRA demonstrates that despite no mention of "negotiated rate" in the subtext of § 10701(f)(9), this exemption provision was intended to apply to claims based on the same type of undercharges defined in § 10701(f)(1), that is the difference between the filed rate and a lower negotiated rate previously billed and paid. The legislative history demonstrates that the claims and undercharges treated in the NRA are those based on the difference between filed and negotiated rates and that the title of § 10701(f) is not to be disregarded or ignored when considering the scope of the exemptions in § 10701(f)(9). There was no intent to create within § 10701(f)(9) amnesty from liability arising out of something other than a carrier's effort to recover the filed rather than the negotiated rate. Thus, it is imperative for one seeking an exemption from liability, as well as a compromise of liability, to establish in the first instance that the carrier is seeking to recover an undercharge, as more fully defined in § 10701(f)(1).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.