**LALCO, A DIVISION OF NEDMARC, INC., Plaintiff,**

v.

**EXETER ENERGY LIMITED PARTNERSHIP, Exeter Management Company, and Oxford Tire Supply, Inc., Defendants.**

#### No. 3:95CV331(JBA).

United States District Court,
D. Connecticut.

Sept. 15, 1997.

---

Wesley S. Chused, Looney & Grossman, Boston, MA, for plaintiff.

Douglas M. Poulin, Cummings & Lockwood, Hartford, CT, Douglas R. Steinmetz, Cummings & Lockwood, Stamford, CT, Stephen James Curley, Winthrop, Stimson, Putman & Roberts, Stamford, CT, for defendant.

## RULING ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR ENTRY OF SEPARATE JUDGMENT (Docs.55, 57)

ARTERTON, District Judge.

Plaintiff, Lalco, A Division of Nedmarc, Inc., ("Lalco") is a motor common carrier authorized by the Interstate Commerce Commission ("ICC") to transport general commodities in interstate commerce. Amended Compl. ¶ 1. Defendants Exeter Energy Limited Partnership and Exeter Management Company, its General Partner ("Exeter", collectively) own and operate a scrap-

tire to energy facility, which generates electricity by burning tires and tire shreds, resulting in the production of by-products, namely fly ash, bottom ash and gypsum. In the Summer, 1991, plaintiff began transporting shipments of freight, including the fly ash, bottom ash and gypsum, for defendant Exeter. In order for Lalco to transport Exeter's freight, it purchased four heavy duty tractors and modified two of Lalco's existing tractors with "wet systems" that allowed the tractors to unload the dump trailer by lifting it.

In accordance with the Interstate Commerce Act ("ICA"), plaintiff filed with the ICC a tariff, ICC LALC 400, which published the rates for Lalco's services in transporting Exeter's freight, including a minimum charge of $350.00 per shipment. (Edelberg Aff. Exh. 1). The tariff became effective on November 27, 1991. Prior to February 14, 1992, plaintiff transported approximately 569 shipments for Exeter for which it charged and was paid a $350.00 minimum charge. In February, 1992, Exeter informed Lalco that it wanted to reduce its transportation costs and that defendant Oxford Tire Supply ("Oxford") would begin transporting some of Exeter's shipments at the lower minimum rate of $275.00 per shipment, and that if Lalco wished to retain any of Exeter's business, Lalco had to reduce its minimum charge from $350 to $275. Beginning on February 14, 1992, Lalco began charging Exeter the lower $275 minimum charge. However, Lalco never filed an amended tariff reflecting this change with the ICC. Between February 14, 1992 and January 20, 1995, Lalco transported and delivered 5,596 shipments of freight, all of which were subject to the $275 minimum charge. As of January 20, 1995, Exeter stopped using Lalco's services. Shortly thereafter, Lalco's president reviewed the freight bills Lalco sent to Exeter during the preceding three years, and recomputed the freight charges due based on the $350 minimum charge per shipping rate in Lalco's tariff. On February 13, 1995, Lalco sent Exeter a letter demanding payment of the sum of $420,243.68, representing the difference between the amounts which Exeter had originally paid ($275) and the $350 due

according to the tariff on file with the ICC. Exeter refused to pay that amount.

Plaintiff brought the instant suit to recover interstate common carrier freight charges claimed to be due under the Interstate Commerce Act (the "ICA"), and damages under Connecticut's Unfair Trade Practices Act ("CUTPA"). Plaintiff moves for partial summary judgment on Count One for unpaid freight charges, contending that there is no factual dispute that defendants are obligated to pay plaintiff's claimed interstate common carrier freight charges pursuant to the filed rate doctrine of the ICA. Additionally, plaintiff moves for entry of final judgment on Count One, claiming that there is no just reason to delay entry of such judgment. Defendant's affirmative equitable and legal defenses and counterclaims allege setoffs and/or legal inapplicability of the Filed Rate Doctrine on which plaintiff's Count One is predicated. (Apparently defendant has also challenged the reasonableness of plaintiff's filed rate with the ICC under 49 U.S.C. § 17705. The court has not been advised of any resolution of defendant's ICC complaint to date).

## STANDARD

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute, and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has met its burden, "the non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995); *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir.1996). However, "a party opposing a properly supported mo-

tion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). In deciding a motion for summary judgment, all reasonable inferences and any ambiguities must be drawn in favor of the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990).

## DISCUSSION

Under the ICA, as it existed during the activity on which suit is based, common carriers were required to "publish and file with the [ICC] tariffs containing the rates for transportation it may provide." 49 U.S.C. § 10762(a)(1). The filed rate requirement was intended to promote reasonable and non-discriminatory transportation rates. *Maislin Industries U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 127, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990).

The ICA prohibits a carrier from providing services at any rate other than the filed rate.

> Except as provided in this subtitle, a carrier providing transportation or service subject to the jurisdiction of the [ICC] ... shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter.... That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation service, or another device.

49 U.S.C. § 10761(a).

Deviation from the filed rate may result in the imposition of civil or criminal sanctions on the carrier or shipper. 49 U.S.C. §§ 11902–11904. The Supreme Court has held that the ICA forbids equitable defenses by a shipper challenging a carrier's collection of its filed tariff rate, including a shipper's ignorance or the carrier's misquotation of the applicable rate. *Southern Pacific Transportation Co. v. Commercial Metals Co.,* 456 U.S. 336, 352, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982); *Maislin,* 497 U.S. at 127 (1990).

> Under the [ICA], the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it unless it is found by the [ICC] to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging less or more than the filed rate. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

*Id.* (quoting *Louisville & Nashville R. Co. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 59 L.Ed. 853 (1915)).

However, notwithstanding the prohibition on equitable defenses, the *Maislin* decision noted that the shipper had the right to challenge the reasonableness of the rate. In *Reiter v. Cooper,* 507 U.S. 258, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993), the Supreme Court elaborated on *Maislin* and held that a shipper who challenges the reasonableness of a tariff must, as a general rule, assert that cause of action as a counterclaim for recoupment under 49 U.S.C. § 11705(b)(3). "One major consequence does attach to the fact that an unreasonable rate claim is technically a counterclaim rather than a defense: a defense cannot possibly be adjudicated separately from the plaintiff's claim to which it applies; a counterclaim can be." *Reiter,* 507 U.S. at 265. Accordingly, a shipper may have to pay his undercharge first, and then seek a recoupment of the alleged unreasonable rate.

The Negotiated Rates Act (the "NRA"), drafted partly in response to *Maislin,* was signed into law on December 3, 1993, and provides some relief to shippers facing undercharge suits. Under the NRA, shippers that qualify as small business concerns under

the Small Business Act are exempt from undercharge claims. 49 U.S.C. § 10701(f)(9)(a). Additionally, shipments of recyclable material cargo are also exempt from undercharge claims. 49 U.S.C. § 10701(f)(9)(C). Effective August 26, 1994, Congress passed the Trucking Industry Regulatory Reform Act of 1994 ("TIRRA") which prospectively abolished the filed rate doctrine for "individually determined rates."

Plaintiff's claims predate these changes. Plaintiff contends that it is entitled to summary judgment on Count One because the following material facts are undisputed. Lalco transported the interstate shipments for Exeter; Lalco had its $350 minimum charge per shipment lawfully on file with the ICC in its tariff; Exeter did not pay the $350 minimum charge per shipment; the difference has been demanded; and Lalco is not insolvent. Although Exeter does not dispute any of these facts, it asserts that there are questions of fact as to several legal defenses it has against plaintiff's claim. *See Reiter,* 507 U.S. at 266 (although filed rate doctrine prohibits shipper from avoiding payment of tariff rates by invoking common law claims and defenses, it does not preclude availability of claims and defenses specifically afforded by the ICA itself).

### A. Undercharges Incurred on or after August 26, 1994

Defendants argue, and plaintiff concedes, that Lalco is not entitled to recover $66,-678.20 of the undercharges which were incurred on or after August 26, 1994, the date of the repeal of Filed Rate Doctrine.

### B. Statute of Limitations

Under 49 U.S.C. § 11706, a common carrier must begin a civil action to recover charges for transportation or service provided by the carrier within three years after the claim accrues. A claim accrues on delivery or tender of delivery by the carrier. 49 U.S.C. § 11706(g). Defendants argue, and plaintiff admits for purposes of this motion, that $1,725 of the undercharges were purportedly incurred more than three years before the lawsuit was started and therefore are barred by the statute of limitations.

### C. Small Business Concern

■ Congress exempted "small business concerns" from undercharge claims. 49 U.S.C. § 10701(f)(9). A "small business concern" is defined as an enterprise that is independently owned and operated and is not dominant in its field of operation. 15 U.S.C. § 632(a). Additionally, regulations provide that an electric supplier is a small business concern if it "produces less than 4 million megawatt hours annually." 13 C.F.R. § 121.601, Major Group 49, S.I.C. 4911. At the outset, Lalco relies on the construction given to the small business concern exemption in *In re American Freight System, Inc.,* 191 B.R. 453 (Bankr.D.Kan.1996) which held that the exemption applies only where the carrier is not operating, and thus the exemption does not apply to Exeter because Lalco is still operating as a common carrier. However, the majority of courts that have considered the issue have held that a shipper claiming an exemption under § 10701(f)(9) need not show the status of the operating carrier. In *Jones Truck Lines v. Whittier Wood Prods. Co.,* 57 F.3d 642, 648 (8th Cir.1995), the Eighth Circuit held that a shipper need not prove that a carrier is no longer transporting property before taking advantage of the small business concern exemption. Reviewing the language of the small business exception provided in § 10701(f)(9), the court concluded that had Congress meant to make the small business exemption contingent on operating status, it could have included a reference to paragraph (9) in § 10701(f)(1) which contains the operating status contingency. The Eighth Circuit also supported its conclusion with the legislative history of the statute which emphasizes Congress' clear intent to exempt totally small businesses from undercharge claims. *See also In re Bulldog Trucking,* 66 F.3d 1390, 1397 (4th Cir.1995) (same); *In re Lifschultz Fast Freight Corp.,* 174 B.R. 271, 274 (Bankr.N.D.Ill.1994), *aff'd* 63 F.3d 621 (7th Cir.1995) (same); *North Penn Transfer v. Polykote Corp.,* 170 B.R. 565, 567–68 (E.D.Pa.1994) (same); *Hoarty v. Midwest Carriers,* 168 B.R. 978, 984–85 (Bkrtcy.D.Neb.1994) (same). In light of the statutory language and legislative history as

persuasively analyzed by the majority of cases addressing the issue, the court concludes that Exeter need not demonstrate that Lalco is no longer transporting property before claiming the small business concern exemption.

Exeter, in whose favor all reasonable inferences and ambiguities must be drawn, has proffered factual support for its small business concern defense to plaintiff's undercharge claim. Specifically, Exeter's factual contentions, that it is a small business electrical supplier because it only produces 190,000 megawatt hours annually, it is independently owned and operated by Exeter Energy Management Company since none of Exeter's other partners produces electricity, and it is not dominant in its field, are supported in the record by the affidavit of its general manager. (Wycherley Aff. ¶ 7). In its reply, movant Lalco contends that 13 C.F.R. § 121.601, Major Group 49, S.I.C. 4911 does not apply because Exeter is not exclusively a provider of electrical services, but is instead concerned with "electric and other services" for which the correct SIC standard is 4931, which provides that the threshold for a small business concern is $5 million of revenue per year. In particular, Lalco submits that in addition to generating electricity, Exeter engages in selling by-products of its energy generation for profit, and receives tipping fees for tire dumping. *See* Edelberg Reply Aff. ¶¶ 21–24. Lalco submits Exeter's monthly report demonstrating that Exeter realized actual revenues from the sale of electricity alone of over $12 million in 1992. *See* Chused Aff., Ex.C at 190.[1] Further, in its Reply Lalco puts forth evidence contradicting Exeter's showing that it is a small business concern, under either SIC 4931 or 4911. Lalco submits documents which it contends demonstrate that Exeter is affiliated with CMS Energy, a world-wide energy conglomerate. CMS's annual report for 1995 shows that its electric sales for 1995 rose 3 percent, to 35.5 billion kilowatt hours (35.5 million megawatts) and its operating revenue

for 1995 was 3.89 billion, of which 2.227 billion were derived from generating electricity. *See* Wycherley Dep. at 4–5, 15, 16, 18, 26 [Chused Aff., Exs. a, B, C, D and F]; Edelberg Reply Aff. ¶¶ 18–19, Ex. 5.

Despite plaintiff's assertions in its reply papers, non-movant Exeter has met its *Celotex* burden of coming forward with evidence disputing plaintiff's contention that Exeter is liable as a matter of law for the undercharge. Lalco's showing in support of its contention that the small business concern defense is inapplicable to Exeter underscores the existence of genuine issues of material fact in dispute as to whether Exeter is exclusively a provider of electrical services and thus could be considered a small business concern generating only 190,000 megawatt hours annually, or instead is engaged in electric and other services in which case its revenues exceed those applicable to a small business concern, and as to whether Exeter is part of CMS Energy and thus outside the small business concern definition.

■ A second exemption from the Filed Rate Doctrine which Exeter claims is under 49 U.S.C. § 10701(f)(9)(C) which provides that a person from whom the additional legally applicable and effective tariff rate or charges are sought shall not be liable for the difference between the carrier's applicable and effective tariff rate and the rate originally billed and paid if the cargo involved in the claim is recyclable materials. Recyclable materials are defined as "waste products for recycling or reuse in furtherance of recognized pollution control programs." 49 U.S.C. § 10733(b). The transportation statutes appear to provide no further definition of a "recognized pollution control program." In opposition to plaintiff's motion for summary judgment, Exeter has come forward with factual assertions that the majority of its shipments consisted of varieties of ash produced from processing scrap tires into energy, and that some of these shipments were reused and recycled in various ways at their

---

1. Because Lalco's contentions and its support therefor were raised in Lalco's Reply Memorandum, Exeter has not put forth any factual support contradicting Lalco's contentions that Exeter is engaged in "electric and other services."

The Local Rules give no recognition to a "surreply" and thus defendant is under no requirement for further filing, having made its initial factual demonstration in opposition to summary judgment.

destinations for such purposes as cement production, or in smelting operations. Specifically, Exeter relies on the affidavit of its Resource Manager to demonstrate that its practice is to convert waste (e.g. scrap tires) into a usable product (energy) and to dispose of its by-products for further use (e.g.smelting). *See* Hayn Aff. ¶ 8. In its reply, Lalco argues that Exeter does not qualify for this exception, submitting copies of Exeter's informational pamphlets which Lalco claims demonstrate that Exeter shipped its energy by-products not for recycling in the furtherance of recognized pollution control programs, but rather that to sell them for profit. *See* Edelberg Reply Aff. ¶¶ 21–22, Ex. 2, 3. Again, a factual dispute exists on this record as to whether the cargo involved in the claim was recyclable material, i.e., what activities, including those for profit, may constitute recycling or reuse in furtherance of recognized pollution control programs.[2] Thus, where non-movant Exeter has set forth specific facts showing that there is a genuine dispute for trial as to the viability of Exeter's recyclable materials defense, it has met its burden under *Celotex.*

In view of the foregoing, the court concludes that plaintiff Lalco has failed to demonstrate the absence of material factual disputes on this record such that summary judgment as to its undercharge claim in Count One is appropriate. Accordingly, plaintiff's Motion for Partial Summary Judgment [doc. 57] is denied. Likewise, plaintiff's Motion for Entry of Separate Judgment [doc. 55] is denied. Further, Defendants' Motion to Strike Plaintiff's Reply [doc. 71] is denied as moot in light of the court's denial of plaintiff's motion to file an oversize reply brief, and plaintiff's subsequent submission of a reply brief complying with the Local Rules.

IT IS SO ORDERED.

---

**2.** As with the small business concern exception, Lalco argues that the recyclable materials defense does not apply to Exeter's operations because Lalco is an operating carrier and is not insolvent or in bankruptcy. It cites no authority, however, for its contention.